IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Kenneth Grant and Dockside and Beyond, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs | ) ) | Civil Action 4:21-cv-1833-SAL |
| State National Insurance Company, Inc., | ) ) | |
| Defendant. | ) ) ) | |

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS OR TRANSFER

COME NOW Kenneth Grant and Dockside and Beyond, LLC, Plaintiffs in the above

captioned action, and, for the reasons set forth below, request that this Honorable Court deny

Defendant's Motion to Dismiss or Transfer [Entry No. 4].

FACTS AND PROCEDURAL HISTORY

Plaintiffs Kenneth Grant and Dockside and Beyond, LLC, a single member Delaware LLC

in which Mr. Grant is the sole member, are the joint owners of the vessel BROWN EYED GIRL

(the "Vessel"), which was used exclusively by Mr. Grant and his wife during the policy period

which is the subject of this action. The Vessel was initially insured by Defendant State National

Insurance Company ("State National"), under Tradewinds Insurance Policy TWD00000921 (the

"Policy"), for an Agreed Value of $900,000 while at Plaintiffs' dock near Baltimore, Maryland.

However, the Vessel was brought to South Carolina in May of 2018 and docked at Mr. Grant's

slip in Little River. The subject policy period began on August 15, 2018 and ran for one year. The

Vessel suffered electrical damage from an apparent lightning strike in June or July of 2019 while

docked at Mr. Grant's dock slip in South Carolina.

Mr. Grant realized that the Vessel had been damaged because various electrical components aboard the Vessel were malfunctioning and, upon inspection, the Vessel's batteries were found to be melted. He reported the damage to State National in July of 2019, and various investigations into the damage were done, resulting in a damage repair estimate of over $1,000,000, submitted to State National on October 4, 2020. The claim has been open for almost two years, and State National has been in possession of the repair estimate for over 9 months, but State National has failed to take prompt action to investigate the claim and either admit coverage and pay for the loss or state the specific reasons for any denial of coverage.

Plaintiffs filed suit for breach of contract and bad faith insurance claims handling practices under South Carolina law in Horry County, South Carolina Court of Common Pleas on May 6, 2021. Plaintiffs served Defendant's appointed agent for service of process, the Director of the South Carolina Department of Insurance, on May 7, 2021. Defendant filed a Notice of Removal [Entry No. 1] in this Court on June 16, 2021. Defendant subsequently filed this Motion to Dismiss or Transfer [Entry No. 4] requesting that the Plaintiffs' claims be dismissed or that the action be transferred to the Southern District of New York based primarily upon the Policy's Choice of Law and Jurisdiction Clause.

For the reasons more fully set forth herein and in Plaintiffs' Motion to Remand filed contemporaneously herewith, Plaintiffs request that this Honorable Court order the following:

1. That the Defendant's Motion to Dismiss or Transfer be denied as moot and that this case be remanded back to Horry County Court of Common Pleas because Defendant failed to file the Notice of Removal within 30 days of service; or

2. In the alternative, that Defendant's Motion to Dismiss or Transfer be denied because the Choice of Law and Jurisdiction clause in the Policy relied upon by Defendants as the basis

for their motion is amended pursuant to provision 9(a) of the Policy to add South Carolina as a proper venue for suit to conform to South Carolina Code § 15-7-120(a); or

3. That Defendant's Motion to Dismiss or Transfer be denied because the forum selection clause at issue is unreasonable because its enforcement would contravene a strong public policy of the State of South Carolina in protecting its consumers from bad faith insurance claims handling practices; and

4. That Defendant's Motion to Dismiss Kenneth Grant's claims for lack of standing be denied because he is a co-owner of the Vessel and an insured under the Policy; and

5. That Defendant's Motion to Dismiss for failure to join Prince William Marine Sales, Inc. as a necessary party be denied because it is not a necessary party under Rule 19(a) (1) (A) and Rule 19(a) (1) (B) is inapplicable.

## LAW AND ARGUMENT

I. <u>Defendant's Motion to Dismiss or Transfer Should be Dismissed as Moot and the Case Should be Remanded to the Horry County Court of Common Pleas Because Defendant Failed to file the Notice of Removal Within 30 Days of Service of the Summons and Complaint</u>

Pursuant to Rule 10(c), Fed. R. Civ. P., Plaintiffs adopt in full by reference the reasons set forth in their Motion to Remand, filed contemporaneously herewith, showing that Defendant failed to timely remove this action within 30 days of service of the Complaint. For the reasons set forth therein, the case should be remanded to the Horry County Court of Common Pleas and Defendant's Motion to Dismiss or Transfer should be denied as moot.

II. <u>Defendant's Motion to Dismiss or Transfer should be denied because the forum selection clause in the policy relied upon by Defendants as the basis for its motion is amended pursuant to provision 9(a) of the Policy to add South Carolina as a proper venue for suit to conform to South Carolina Code § 15-7-120(a)</u>

As acknowledged by Defendant in its motion, this is a marine insurance case, and the contract of marine insurance is a maritime contract subject to substantive maritime law. Def.'s Mot., p. 6. However, the substantive maritime law in the area of marine insurance has largely been delegated back to the individual states. The United States Supreme Court, in the marine insurance case of *Wilburn Boat Co. v. Fireman's Fund Ins. Co.,* declared that, "[i]n the field of maritime contracts as in that of maritime torts, the National Government has left much regulatory power in the States…. [T]his state regulatory power, exercised with federal consent or acquiescence, has always been particularly broad in relation to insurance companies and the contracts they make." *Id.,* 348 U.S. 310, 313-314, 75 S. Ct. 368, 370, 99 L. Ed. 337, 342 (1955). Further, the Court noted that "Congress has been exceedingly cautious about disturbing this system, even as to marine insurance where congressional power is undoubted. We, like Congress, leave the regulation of marine insurance where it has been -- with the States." *Id*. at 321.

The result of the Supreme Court's decision in *Wilburn Boat* is that state law will govern the interpretation of marine insurance policies in the absence of federal legislation or an otherwise conflicting, entrenched maritime rule. *Id*. Thus, a choice-of-law analysis is a threshold requirement in every marine insurance case, including this one.

While the determination of which maritime rules constitute entrenched federal precedent has spawned at least four competing tests within the federal circuits, with regard to forum selection clauses in maritime contracts, there is little room for debate as to whether *The Bremen v. Zapata Off-Shore Co.* 407 U.S. 1, 11, 92 S. Ct. 1907, 1914, 32 L. Ed. 2d 513, 521 (1972), establishes an entrenched federal maritime rule favoring the enforcement of forum selection clauses in maritime contracts unless they are unreasonable under the circumstances. 407 U.S. at 10; *Albemarle Corp. v. Astrazeneca UK Ltd*, 628 F.3d 643, 2012 AMC 1347 (4th Cir., 2010).

While a choice-of-law analysis to determine whether there is an entrenched federal maritime rule on point and, if not, whether New York law or South Carolina law may apply to the interpretation of the Policy language outside of the forum selection clause may otherwise be appropriate, it is unnecessary in this case because the law as to interpretation of the contract terms appears to be uniform on the relevant issues. To interpret the meaning of the Choice of Law and Jurisdiction Clause in Section 7 of the Policy, which forms the basis of the Defendant's motion, it is first necessary to read the Policy in its entirety to determine how other policy provisions may affect it, as written. *Maersk Line, Ltd. v. United States*, 513 F.3d 418, 423, 2008 AMC 278 (4th Cir., 2008) ("in contractual disputes, every word is important"); *C3 Invs. of N.C., Inc. v. Ironshore Specialty Ins. Co.*, No. 2:19-cv-2609-DCN, 2020 U.S. Dist. LEXIS 24498, at *14 (D.S.C. Feb. 12, 2020) ("[B]oilerplate language in a contract is not benign, and the court is required to give every provision in a contract legal effect"); *Postlewaite v. McGraw-Hill, Inc.*, 411 F.3d 63, 67 (2d Cir., 2005) (Applying New York law, contracts must be read as a whole and interpreted to give effect to the contract's purpose); and *Williams v. Gov't Emples. Ins. Co.*, 409 S.C. 586, 595, 762 S.E.2d 705, 710 (S.C. 2013) ("A contract is read as a whole document so that one may not create an ambiguity by pointing out a single sentence or clause").

Section 7(a) of the Policy initially provides for the application of federal maritime law or, in the absence of any entrenched maritime principle, the law of New York to the interpretation of the Policy. However, further reading the Policy, Section 9(a) of the Policy states that, "[i]f any term of this policy conflicts with *any applicable state's law*, or federal statute, they are amended to conform to the minimum requirements of that law or statute." (emphasis added).

Neither the phrase "any applicable state's law", nor any of its component terms, are defined in the Policy. In the relevant sentence, the word "applicable" is an adjective describing the

possessive noun, "state", which implies that a determination must be made as to which state is the "applicable state" for purposes of comparing the law to the Policy provisions. Webster's Encyclopedic Unabridged Dictionary defines the word "applicable" as "applying or capable of being applied; relevant; suitable; appropriate." *Id.,*1989 ed. at p. 73. When reading the Policy as a whole, the most reasonable interpretation of the phrase "applicable state" in Section 9(a) is that it is the state where the Policy has current relevance and is in current force and effect, or the state where the benefits conferred by the Policy may be needed by the insured - whether to obtain dockage, or for defense and indemnity from a liability claim, or for a property damage claim – at the relevant time.

In this case, South Carolina was the state where the Policy had force and effect at the time of contracting and at the time of the loss. Pl. Compl., ¶¶ 6-7. The property and the insured risk were located in South Carolina during the entire policy period. Because the Policy was in force in South Carolina, and because the loss occurred in South Carolina, it is reasonable to determine that South Carolina law is the *applicable state's law* that is compared to the terms of the Policy through Section 9(a) for conflict purposes.

The Choice of Law provision in the Policy, at section 7(a), conflicts with South Carolina Code § 38-61-10, which states, in pertinent part, that "[a]ll contracts of insurance on property, lives, or interests in this State are considered to be made in the State and … are subject to the laws of this State." *Id.* "Where this statute applies, it governs as South Carolina's rule of conflicts." *Universal Ins. Co. N. Am. v. Coward*, 2021 U.S. Dist. LEXIS 16326, at *10, 2021 WL 288427 (D.S.C. January 28, 2021) (citing *Sangamo Weston Inc. v. Nat'l Surety Corp.*, 307 S.C. 143, 414 S.E.2d 127, 130 (S.C. 1992) (applying the subject code section to an insurance contract executed

outside the state between non-resident parties because the insured property at issue was located within the state)).

In order to resolve the conflict between the Policy language in section 7(a), which purports to require the application of New York law to a property damage loss occurring in South Carolina, and the statute, which mandates that South Carolina law apply to such losses, section 9(a) of the Policy amends section 7(a) of the Policy to replace New York law with South Carolina law. Thus, a proper reading of choice of law provision in the Policy would be that the Policy "shall be governed by, interpreted and construed under United States federal maritime law, or in the absence of any entrenched federal maritime law on the issue in question, under the internal laws of South Carolina without regard to conflict of laws principles."

Further, the Jurisdiction Clause, at section 7(b) of the Policy, conflicts as written with South Carolina Code section 15-7-120(a), which states that, "[n]otwithstanding a provision in a contract requiring a cause of action arising under it to be brought in a location other than as provided in this title and the South Carolina Rules of Civil Procedure for a similar cause of action, the cause of action alternatively may be brought in the manner provided in this title and the South Carolina Rules of Civil Procedure for such causes of action." In order to resolve the conflict between the Policy language, which purports to restrict the proper venue for suit to the Southern District of New York, and the statute, which mandates, at a minimum, that venue also be available in South Carolina, Section 9(a) amends Section 7(a) to add South Carolina as an alternatively available venue for suit between the parties to the Policy.

Such an interpretation is fair to both parties. It is fair to Defendant, as the drafter of the Policy best situated to prevent interpretations contrary to its wishes. State National drafted the Policy terms with knowledge that the Navigation Warranty in the Policy allowed Plaintiffs to take

the Vessel to all "[i]nland and coastal waters of the contiguous United States and Canada." [Policy, Entry 4-1 at p. 2]. If State National did not want the standard Policy terms, including the terms of Section 7, potentially altered by conflicting laws in the various states or Canada that Plaintiffs might choose to take the Vessel to, then it could have omitted Section 9 from the Policy altogether. Or, it could have substituted "New York law" for the phrase "any applicable state's law". Or, it could have issued Plaintiffs a policy with a Navigation Warranty restricting coverage of the Vessel to the waters of the State of New York. Or, it could have more narrowly defined the phrase "any applicable state's law" in the definitions section of the Policy to exclude South Carolina. But it did none of these things; instead, it issued the Policy to Plaintiffs with language in section 9(a) which requires amendment of Section 7 of the Policy to conform to the law of South Carolina as the place where the Vessel was insured at the time of the loss.

This reading is the only interpretation of the Policy language that gives effect and meaning to Section 9(a) of the Policy and renders it consistent with Section 7. *United States v. Under Seal (In re Grand Jury 16-3817 (16-4)*, 740 Fed. Appx. 243, 246 (4th Cir., 2018) ("We must read the contract 'to give effect to all its provisions and to render them consistent with each other.'"); *C3 Invs. of N.C., Inc. v. Ironshore Specialty Ins. Co.*, No. 2:19-cv-2609-DCN, 2020 U.S. Dist. LEXIS 24498, at *14 (D.S.C. Feb. 12, 2020) ("[The Insurer] must be held to account for the plain language it included in its insurance policy, no matter how arbitrarily that language might have been placed there. An insurer may not escape the plain meaning of the language it included in its policy with an insured"); *Burgdorf v Kasper*, 83 A.D.3d 1553, 1555, 921 N.Y.S.2d 769, 771, (N.Y. 2011) ("[I]t is a cardinal rule of construction that a court adopt an interpretation that renders no portion of the contract meaningless. Moreover, where two seemingly conflicting contract provisions reasonably can be reconciled, a court is required to do so and to give both effect (citations omitted)); *Valley*

*Pub. Serv. Auth. v. Beech Island Rural Community Water Dist.*, 319 S.C. 488, 494, 462 S.E.2d 296, 299 (S.C. 1995) ("Every term contained in a contract must be considered and given effect if possible").

No other reasonable interpretation of this clause gives effect to its purpose within the insurance Policy as a whole, which is clearly to bring the Policy language into conformity with the laws of the many jurisdictions through which the insured may travel so that State National can continue to insure property in those jurisdictions without being in violation of their laws. Interpretation of the Policy terms in this way does nothing more than give the parties what they have bargained for under the circumstances. And such an interpretation is in line with federal maritime law and analogous to the reasoning used by the Supreme Court in *The Bremen*, 407 U.S. at 11 (Noting that its decision "accords with ancient concepts of freedom of contract and reflects an appreciation of the expanding horizons of American contractors who seek business in all parts of the world"). This reasoning is also in line with this Court's decision in *Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.*, 440 F. Supp. 3d 520, 528 (D.S.C. 2020) because it "does not rewrite the parties' policy, but rather gives effect to the language it contains." *Id.*

To the extent that State National has a different interpretation of the meaning of the clause, then the insured's interpretation should prevail because State National drafted the Policy. The doctrine of *contra proferentem* - that any ambiguity in the meaning of a contract should be construed against the drafter, applies to this Policy. *Maersk Line, Ltd. v. United States*, 513 F.3d 418, 423, 2008 U.S. App. LEXIS 1797, at *11, 2008 AMC 278 (4th Cir., 2008) (federal maritime case citing, *e.g., Carolina Care Plan Inc. v. McKenzie*, 467 F.3d 383, 389 (4th Cir. 2006) ("[a]mbiguity imposes costs on the parties to a contract: one party may rely on an errant interpretation, or find its original intent flouted if a dispute arises. *Contra proferentem* shifts the cost of ambiguity to the party best

positioned to avoid and bear it . . ."); *Albany Sav. Bank, F.S.B. v. Halpin*, 117 F.3d 669, 674, 1997 U.S. App. LEXIS 15360, at *15-16 (**2d Cir., 1997**) ("New York contract law includes the rule that ambiguities in contracts should be construed against the drafter"); *Ward v. Dixie Nat'l Life Ins. Co.*, 257 Fed. Appx. 620, 627 (4th Cir., 2007) (citing *Hann v. Carolina Cas. Ins. Co.,* 252 S.C. 518, 167 S.E.2d 420, 423 (S.C. 1969) ("It is settled beyond cavil in this jurisdiction that the terms of an insurance policy should be construed most liberally in favor of the insured.").

The forum selection clause in Section 7 of the Policy, as amended by the provisions of Section 9 of the Policy, permits suit on the Policy to be brought in South Carolina. Because South Carolina is the jurisdiction where the Vessel was located during the Policy period, where the damage occurred, and where the Defendant's breaches of contract and bad faith claims handling practices occurred, South Carolina is the proper venue for this suit, and Defendant's Motion to Dismiss or Transfer should be denied.

III.    <u>Defendant's Motion to Dismiss or Transfer should be denied because the forum selection clause at issue is unreasonable because its enforcement would contravene a strong public policy of the State of South Carolina in protecting its consumers from bad faith insurance claims handling practices</u>

In the alternative, Defendant's Motion to Dismiss or Transfer should be denied because the forum selection clause at issue is unreasonable because its enforcement would contravene a strong public policy of the State of South Carolina in protecting its consumers from bad faith insurance claims handling practices.

The [C]ourt's task in 'determining the enforceability and applicability' of a forum-selection clause 'is threefold.' *Callendar v. Anthes*, No. 14-0121, 2014 U.S. Dist. LEXIS 54093, 2014 WL 1577787, at *4 (D. Md. Apr. 18, 2014) First, the Court must determine whether the clause is mandatory or permissive. 2014 U.S. Dist. LEXIS 54093, [WL] at *5. Next, if the clause is mandatory, the Court must establish whether the claims at issue fall within the scope of the clause. *Id*. If they do, the clause presumptively applies to bar adjudication of the claims outside of the designated forum. *Id*. Finally, the Court must decide 'whether the party opposing

the clause's enforcement has rebutted the presumption of enforceability by proving that enforcement would be unreasonable.'

*Companion Specialty Ins. Co. v. Med James Inc*., 2015 U.S. Dist. LEXIS 195503, at *31.

The first prong of the test requires a determination of whether the forum selection clause is mandatory or permissive. When considered as written, language very similar to the forum selection clause at issue has been deemed to be mandatory. However, the modification of the written language to include South Carolina as a proper venue, as is set forth in detail in Section II above, would render the clause permissive because it would allow venue to be proper in either South Carolina or New York. See *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 651 (4th Cir. 2010).

For purposes of this motion, Plaintiffs concede that the scope of the forum selection clause at issue is broad enough to encompass Plaintiffs' claims in this action. However, even if the forum selection clause is found to be mandatory and sufficiently broad in scope to encompass Plaintiffs' claims, it is unreasonable under the circumstances to enforce the clause because it would contravene a strong public policy of the State of South Carolina.

A forum selection clause may be found unreasonable if: (1) its formation was induced by fraud or overreaching; (2) the complaining party will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4*) its enforcement would contravene a strong public policy of the forum state* (emphasis added). *Albemarle Corp. v. Astrazeneca UK Ltd*, 628 F.3d 643, 645, 2012 AMC 1347 (4th Cir., 2010) (citing *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996) (summarizing the *The Bremen* definition)).

Under the Supreme Court's decision in *Wilburn Boat*, state law governs an insured's bad faith claims. *See, e.g., Pace v. Insurance Co. of N. Am.*, 838 F.2d 572, 579, (1st Cir., 1988) ("[The] Rhode Island [bad faith] cause of action can coexist with federal admiralty law under the *Wilburn Boat* formulation"); *P.T. Tugs, Inc. v. United States Fire Ins. Co.*, 796 F.2d 125, 127-128 (5th Cir., 1986) (applying Louisiana bad faith law to marine insurance policy); and *Martin v. Great Lakes Reinsurance (UK) P.L.C.*, 2010 WL 94120, 2010 U.S. Dist. LEXIS 841, 2010 WL 94120 (D. Ariz. 2010) (applying Arizona bad faith law to marine insurance policy).

It is well settled that New York does not recognize the tort of first party insurance bad faith. *Pfeffer v. Harleysville Group, Inc.*, 2011 U.S. Dist. LEXIS 146473, at *32, 2011 WL 6132693 (a cause of action for bad faith denial of insurance coverage, absent some underlying tort claim independent of defendant's contractual obligations, is not viable) (citing *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 319-20, 662 N.E.2d 763, 639 N.Y.S.2d 283 (1995)).

In contrast, South Carolina has a strong public policy of holding insurers accountable for bad faith claims handling practices. South Carolina has embraced the tort of insurer bad faith since 1933. *Tyger River Pine Co. v. Maryland Casualty Co.*, 170 S.C. 286 (1933). "[W]here the contract creates a certain relationship between the parties, and certain duties arise by operation of law, irrespective of the contract, because of this relationship, then the breach of such duties warrants an action in tort." "The duty of good faith and fair dealing is such a duty that arises by operation of law due to the special relationship of the parties in an insurance contract..." *Brown v. South Carolina Ins. Co.*, 284 S.C. 47, 52 (1984).

In *Nichols v. State Farm Mut. Auto Ins. Co.,* when first recognizing the tort of first party insurance bad faith for insurance claims handling, the South Carolina Supreme Court found that:

> The public policy reasons for recognizing this cause of action are plentiful. The insurance business is affected with a public interest. *Hinds v. United Ins. Co. of*

*America*, 248 S.C. 285, 149 S.E. (2d) 771 (1966). An insured ordinarily possesses no bargaining power and no means of protecting himself from the kind of treatment of which Respondent complained. An insured does not contract to obtain any kind of commercial advantage or leverage but only to protect himself against the spectre of accidental [or unavoidable] loss." *Trimper v. Nationwide Ins. Co*., 540 F. Supp. 1188, 1193 (D.S.C. 1982.)

Absent the threat of a tort action, the insurance company can, with complete impunity, deny any claim they wish, whether valid or not. During the ensuing period of litigation following such a denial, the insurance company has the benefit of profiting on the use of the insured's money.

*Nichols v. State Farm Mut. Auto. Ins. Co.,* 279 S.C. 336, 339-340, 306 S.E.2d 616, 619, (1983).

The Fourth Circuit has recognized that South Carolina's tort of bad faith in the insurance claims handling context "rests upon the special characteristics of the insurance relationship and the concern that, in the absence of potential tort liability, an insurer could 'delay and deny a claim with virtual impunity' and pay only the contractual limits. *Liberty Mut. Fire Ins. Co. v. JT Walker Indus.,* 554 Fed. Appx. 176, 187 4th Cir., 2014) (citing *Masterclean, Inc. v. Star Ins. Co*., 347 S.C. 405, 556 S.E.2d 371, 374-75 (S.C. 2001).

The *Liberty Mutual Fire Ins*. Court further noted that "bad faith processing liability has typically involved a delay in providing or refusal to provide benefits." *Id*. (citing *Tadlock Painting Co. v. Md. Cas. Co.*, 322 S.C. 498, 473 S.E.2d 52, 53 (1996) (insurer refused to continue settlement negotiations until insured agreed to insurer's interpretation of deductible provision*); Cock-N-Bull Steak House, Inc. v. Generali Ins. Co.*, 321 S.C. 1, 466 S.E.2d 727, 730 (1996) (insurer failed to provide reasonable basis for excluding certain eligible items from coverage); *Nichols*, 306 S.E.2d at 618 (insurer's refusal to pay for damage incurred by auto theft loss resulted in seven-month delay in car repair).

This is exactly the type of conduct that Plaintiffs are complaining of in this case. Enforcement of the Policy's forum selection clause as interpreted by Defendant would allow State

National's artful drafting of the insurance contract to act as a *de facto* waiver of Plaintiff's right to bring a bad faith cause of action that South Carolina has created to prevent this type of delay by insurers.

A fair reading of the Supreme Court's teachings in *The Bremen* and *Wilburn Boat*, *supra* demonstrates that the usual quest for uniformity in admiralty sought in other types of maritime contracts takes a backseat to state law and policy in marine insurance contracts unless an entrenched maritime rule is in place. *The Bremen*, although not a marine insurance case, developed a test for enforcement of contractual forum selection clauses which included a balancing of the interests of the various States when determining whether it was reasonable to enforce them. Enforcement under the instant circumstances would be unreasonable because it would contravene a strong public policy of South Carolina. *See*, *e.g. Albemarle Corp. at 652; Martin v. Great Lakes Reinsurance (UK) P.L.C.*, 2010 WL 94120, 2010 U.S. Dist. LEXIS 841, 2010 WL 94120 (D.Az., 2010); *Nichols*, 306 S.E.2d at 618.

For these reasons, Plaintiffs respectfully request that the Defendant's Motion to Dismiss or Transfer be denied.

IV.     Defendant's Motion to Dismiss Kenneth Grant's claims for lack of standing should be denied because he is an owner of the Vessel and an insured under the Policy.

Article III standing is a fundamental, jurisdictional requirement that defines and limits a court's power to resolve cases or controversies. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998); *Emery v. Roanoke City Sch. Bd.*, 432 F.3d 294, 298 (4th Cir. 2005). And "the irreducible constitutional minimum of standing" consists of injury-in-fact, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992); *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 458 (4th Cir. 2005). "Standing refers to a party's right to make a legal claim or seek judicial

enforcement of a duty or right." *Bank of Am., N.A. v. Draper*, 405 S.C. 214, 219 746 S.E.2d 478, 480 (Ct. App. 2013). A property owner "necessarily has standing." *Sandhills Ass'n of Realtors v. Village of Pinehurst*, 1999 U.S. Dist. LEXIS 19094, at *13 (M.D.N.C. 1999).

Both federal and state courts have held that an insurance policy is the same as any other contract and its terms are to be construed according to the law of contracts. *Brand Distribs., Inc. v. Ins. Co. of N. Am.*, 400 F. Supp. 1085 (E.D. Va. 1974); *See also Butler v. Travelers Home & Marine Ins. Co.*, No. 28026, 2021 S.C. LEXIS 51, at *8 (May 12, 2021). "The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language." *Id.* (quoting *Schulmeyer v. State Farm Fire & Cas. Co.*, 353 S.C. 491, 495, 579 S.E.2d 132, 134 (2003)); *See also supra* p. 5.

"Ambiguous or conflicting terms in an insurance policy must be construed liberally in favor of the insured and strictly against the insurer." *Whitlock v. Stewart Title Guar. Co.*, 399 S.C. 610, 615, 732 S.E.2d 626, 628 (2012); *See also supra* p. 5. However, "[a]s is true with all contracts, unambiguous terms in an insurance policy require no construction, and their plain meaning will be given full effect, regardless of whether they might be of benefit to the insurer, or be of detriment to an insured." *Garnett v. WRP Enters.*, 380 S.C. 206, 669 S.E.2d 591 (2008) (quoting *Payne v. Twiggs County Sch. Dist.*, 269 Ga. 361, 496 S.E.2d 690, 691-92 (Ga. 1998)); *See also supra* p. 5.

Plaintiff Kenneth Grant has a material and substantial interest in the outcome of this litigation and has standing: (1) as an owner of the Vessel; and (2) under the Policy definition of an "Insured Person" as described in Section 11(a).

By definition of the word "Policy" in the section "Definitions Used in this Policy" ¶ 24 "the declarations page, application, and any endorsements" together as a whole are the Policy. Def.'s Mot. Ex. A, p. 6. On the insurance application, Kenneth Grant is named as the "Titled

Owner" of the Vessel. Def.'s Mot. Ex. A, p. 32.  Additionally, the U.S. Coast Guard Certificate of Documentation names Grant as the vessel's owner alongside Dockside and Beyond, LLC of which Grant is the corporation's sole member. Def.'s Mot. Ex. A, p. 29.

Grant has standing as an owner of the subject property, the Vessel, because he has suffered an actual injury – his Vessel is no longer seaworthy.  He has a legal interest and right to protect his property, a causal connection between his injury and the insurer's conduct, and a favorable judgment would remedy his injury.  In addition, Defendant has been on notice that Grant is an owner of the Vessel since April 2017 as shown by the insurance application.  Additionally, since the inception of coverage for the Vessel, Defendant has sent insurance correspondence and documentation to Grant.

Furthermore, Grant has standing as the Vessel operator.  Section 11(a) of the Policy defines an "Insured Person" as:

> (1) You;
>
> (2) any person operating your covered yacht with your prior permission;
>
> (3) any person, firm, corporation or legal entity you permit to operate
>
>     the covered yacht for which there is not direct payment….

Grant fits these definitions as an insured person under the policy.  He was the operator of the Vessel and was a person permitted to operate the vessel and did not receive a direct payment.

By the Policy's own terms Grant is covered under the Policy. Defendant could have drafted the Policy and omitted Section 11(a) or modified the terms. But Defendant chose not to do so. These terms are unambiguous.  The law provides when the intent of the parties' can be derived from the plain meaning of the agreement, no interpretation is necessary.

The above-described sections, as defined by the Policy, provide that Grant is covered under the Policy. Therefore, Defendant's Motion should be denied because Grant, an owner of the vessel and operator of the Vessel, has standing to sue the insurer to protect his property interests.

V.    Defendant's Motion to Dismiss for failure to join Prince William Marine Sales, Inc. as a required party should be denied because it is not a necessary party under Rule 19(a) (1) (A) and Rule 19(a) (1) (B) is inapplicable.

Prince William Marine Sales, Inc. ("Prince William), a loss payee under the Policy, is holder of a first preferred ship mortgage on the Vessel. Plaintiffs are the mortgagees. Defendant filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b) (7) alleging failure to join Prince William pursuant to Fed. R. Civ. P. 19(a) (1) (B) [Entry No. 4, p. 5]. On a motion for joinder, the moving party bears the burden of showing that the absent nonparty is "necessary" under Rule 19(a). *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005). "The inquiry contemplated by Rule 19 is a practical one" left "to the sound discretion of the trial court." *Coastal Modular Corp. v. Laminators, Inc.*, 635 F.2d 1102, 1108 (4th Cir. 1980).

Rule 19 has been interpreted to delineate between parties that are "necessary" and those that are "indispensable." *Companion Specialty Ins. Co. v. Med James Inc.*, No. 3:15-cv-249-TLW, 2015 U.S. Dist. LEXIS 195503, at *24 (D.S.C. July 29, 2015) (quoting *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 440 (4th Cir. 1999)). A party must be necessary to be indispensable, but not all necessary parties are indispensable. *Id*. at *25 (citing *Schlumberger Indus., Inc. v. Nat'l Sur. Corp.*, 36 F.3d 1274, 1285-86 (4th Cir. 1994)).

When considering a Rule 12(b) (7) motion, Rules 19(a) and 19(b) set forth the general test. *Id*. The Fourth Circuit has interpreted Rule 19(a) (1) to mean that "complete relief refers to relief as between the persons already parties, not as between a party and the absent person whose joinder is sought." *BTC Resolution, LLC v. Ford Motor Credit Co.*, No. 1:06cv144, 2006 U.S. Dist. LEXIS

26310, at *8 (E.D. Va. Apr. 12, 2006) (quoting *United States v. County of Arlington*, 669 F.2d 925, 929 (4th Cir. 1982)). See also *LLC Corp. v. Pension Guaranty Benefit Corp.*, 703 F.2d 301, 305 (8th Cir. 1983) (Under Rule 19(a) (1), "the focus is on relief between the parties and not on the speculative possibility of further litigation between a party and an absent person.").  If the court finds the nonparty necessary, under Rule 19(a) (1), it will be ordered into the action. *Companion Specialty Ins. Co. v. Med James Inc.*, 2015 U.S. Dist. LEXIS 195503, at *25.  If the necessary party cannot be joined without depriving the court of subject-matter jurisdiction, it will analyze the factors set forth in Rule 19(b) and determine whether it is permissible for the proceeding to continue in the party's absence, if not, the party is indispensable and dismiss the action. *Id*.

Rule 19(b) is inapplicable here because Prince William is not a necessary party and even if it were, subject-matter jurisdiction would not be disturbed.  It should be noted that "Courts are loath to dismiss cases based on nonjoinder of a party, so dismissal will be ordered *only when the resulting defect cannot be remedied*, and prejudice or inefficiency will *certainly* result." *Id*. (quoting *Owens-Illinois*, 186 F.3d at 441). (emphasis added).

A. Prince Williams is not a necessary party under Rule 19(a) (1) (A).

A party is "necessary" only if the Court cannot "accord complete relief among [the] existing parties" in his absence. *Amari v. Griffin*, Civil Action No. 5:20-cv-00050, 2021 U.S. Dist. LEXIS 85251, at *6 (W.D. Va. May 4, 2021) (quoting Rule 19(a)).  "Complete relief is any relief that will effectively and completely adjudicate the dispute." *Id*. (quoting *Pettiford v. City of Greensboro*, 556 F. Supp. 2d 512, 518 (M.D.N.C. 2008)) (internal quotation marks omitted).  What effect a decision may have on absent parties is immaterial. *See MasterCard Int'l v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 385 (2d Cir. 2006) ("While there is no question that further litigation

[involving the absent party] is inevitable if MasterCard prevails in this lawsuit, Rule 19(a) (1) is concerned only with those who are already parties.").

In *Companion Specialty Ins. Co.*, plaintiff, an underwriter, and defendants, corporations handling claims arising from the policies produced by plaintiff, entered into agreements to provide and process insurance. *Id*. at *2, *3. Subsequently, an insured's apartment was damaged by a hailstorm resulting in a claim against the policy issued by plaintiff. *Id*. at *3. Defendants, in due course of handling the claim, hired a third party, NHI, to investigate the claim. *Id*. Dissatisfied with the handling of the claim, the insured filed a bad faith action seeking to hold plaintiff liable for the handling of the claim by NHI. *Id*. at *4.

Defendants removed the case to federal court and filed, in part, a motion to dismiss for failure to join and indispensable party, NHI. *Id*. at *2. Defendants' primary argument was that NHI was likely liable to plaintiff or defendants should any of them incur a loss a result of the bad faith action. *Id*. at *25, *26.

The court held that NHI was not a necessary party stating that the Fourth Circuit in *U.S. v. Cnty. of Arlington, Va.*, noted that "[c]omplete relief refers to relief as between the persons already parties, not as between a party and the absent person whose joinder is sought…." *Companion Specialty Ins. Co. v. Med James Inc.*, 2015 U.S. Dist. LEXIS 195503, at *26, *27 (quoting) 669 F.2d 925, 929 (4th Cir. 1982)) (internal quotation marks omitted). Complete resolution of the dispute between the parties did not require joinder of NHI, and, subsequently, dismissed the motion. *Id*.

In *U.S. v. Cnty. of Arlington, Va.*, the U.S. entered into an agreement which established bilateral diplomatic relations with GDR, a foreign third party. In turn GDR purchased property in

Arlington County, Virginia. The County brought suit against GDR for unpaid taxes and received a favorable judgment. 669 F.2d 925, 927 (4th. Cir. 1982).

Next, the U.S. brought suit against the County to enforce its agreement with GDR. *Id*. at 928. The County argued that GDR was a necessary party pursuant to Rule 19 because it could not be afforded complete relief without joining GDR and that even if the court affirmed its judgment, it would have to file another action against GDR to collect its taxes. *Id*. The Fourth Circuit dismissed the case stating "the county's argument misconstrues rule 19(a) (1). 669 F.2d at 929. Rule 19(a) (1) (A) refers to "[c]omplete relief … as between the persons already parties, not as between a party and the absent person whose joinder is sought…." *Id*.

The instant case is similar to *U.S. v. Cnty. of Arlington, Va*. because of the contractual alignment of the parties in both cases. Plaintiffs and Prince William have an agreement, the promissory note and first preferred ship mortgage, just as the U.S. had an agreement with GDR. Plaintiffs sued Defendant for breach of contract, *inter alia* just as the U.S. sued County to enforce its agreement. Defendant alleged failure to join Prince William, the alleged necessary party, under Rule 19(a) (1) just as County alleged failure to join GDR. Prince William has the same status as GDR. Despite that the U.S. and GDR had a contractual relationship, the Fourth Circuit held that GDR was not a necessary party under Rule(a) (1) (A). An analysis was not performed under Rule 19(a) (1) (B) indicating that GDR had not claimed an interest in the case.

The one difference between these two cases is that in *U.S. v. Cnty. of Arlington, Va*., defendant County did not have a contractual relationship with the alleged necessary party.

Further, a party is necessary only if the Court cannot accord complete relief among the existing parties in his absence. It is axiomatic that this Court can afford complete relief between Plaintiffs and Defendant in this case. Defendant insurer has taken nearly two years and failed to

either pay or deny Plaintiff's insurance claim regarding the Vessel. This Court can absolutely decide whether Plaintiffs' claims for breach of contract and bad faith have merit without the involvement of Prince William. Plaintiffs have a prior obligation to pay the note and satisfy the Vessel's mortgage, separate from these claims.

      B.    <u>Prince William is not a necessary party under Rule 19(a) (1) (B).</u>

Rule 19(a) (1) (B) focuses on the impact of the nonjoinder on the parties to the action. *Sunbelt Rentals, Inc. v. Guzman*, No. 5:20-CV-00070-KDB-DSC, 2020 U.S. Dist. LEXIS 167059, at *4 (W.D.N.C. Aug. 27, 2020). Importantly, the nonjoined party must be the one claiming an interest. *Id*. It is well established that where the absent party has not claimed an interest, Rule 19(a) (1) (B) does not apply. *Id*. at *5; *See e.g., Am. Gen. Life & Acc. Ins. Co.*, 429 F.3d at 93; *Polanco v. Hsbc Bank United States Nat'l Ass'n*, No. 3:17-CV 00466-GCM, 2019 U.S. Dist. LEXIS 217949, 2019 WL 6999699, at *3, *4 (W.D.N.C. Dec. 19, 2019) (joinder inappropriate where nonparty did not express an interest in joining case); *Humble Oil & Ref. Co. v. Harang*, 262 F. Supp. 39, 45 (E.D. La. 1966) (denying a motion to join a party under Rule 19(a) (1) (B) (where that party had not claimed an interest in the action); *Refundo, LLC v. Drake Enters.*, Civil Action No. 13-643 (JLL), 2013 U.S. Dist. LEXIS 57671, at *8 n.2 (D.N.J. Apr. 22, 2013) (denying a motion to join the IRS as a party where the "IRS ha[d] not claimed an interest in [the] litigation"). Rule 19(a) (1) (B) does not apply when a defendant attempts to assert an interest on an absent party's behalf. *Sunbelt Rentals, Inc.*, 2020 U.S. Dist. LEXIS 167059, at *5.

In *Polanco*, Plaintiff's husband obtained a loan secured by real property and executed a quitclaim deed in favor of Plaintiff which later went into default. 2019 U.S. Dist. LEXIS 217949, 2019 WL 6999699, at *1. After defaulting, Plaintiff and Defendants entered into a loan modification agreement. *Id*. at *2. Defendants argued Plaintiff's husband should be joined under

Rule 19(a) (1) (B) because Defendants may be "subject to contradictory findings." *Id*. As an initial matter, the court determined that Defendants misunderstood Rule 19(a) (1) (B) as providing "that a person *shall* be joined as a party … if he *has* 'an interest relating to the subject of the action….'" *Id*. at *3 (the correct interpretation would be the insertion of the conjunction "and") (emphasis added). The court highlighted that Plaintiff's husband did not request to join the case and that since he had not expressed an interest in joining, joinder under Rule 19(a) (1) (B) was inappropriate. *Id*. at *3, *4.

The instant case mirrors *Polanco* and the plethora of other cases holding that a party that has not claimed an interest in the case is not a necessary party under Rule 19(a) (1) (B). Prince William has not claimed an interest in this case, and Defendant's motion does not allege otherwise. Furthermore, Defendants attempt to assert an interest on Prince William's behalf fails under the same rule. Either of these reasons close the Rule 19(a) (1) (B) door. Moreover, Grant's prior obligations to Prince William are separate and apart from this litigation. Finally, to Plaintiffs' knowledge, Prince William is not involved in any related concurrent litigation, making any chance for incongruent results unlikely.

Accordingly, this Court should find that Prince William is not a necessary party. In the alternative, should the Court find that Prince William is a necessary party, Plaintiff's claims should not be dismissed because: (i) "[c]ourts are loath to dismiss cases based on nonjoinder…" and (ii) any failure to join Prince William can be remedied because the court's subject-matter jurisdiction would not be destroyed. As an alternative, this Court should allow Prince William to intervene, should it choose to, as "dismissal [should] be ordered only when the resulting defect cannot be remedied…." For the foregoing reasons Defendants Motion to Dismiss for failure to join a required party should be denied.

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs request that this Honorable Court deny Defendant's

Motion to Dismiss or Transfer [Entry No. 4].

COOPER & BILBREY, P.C.

By:/s/Albert G. Bilbrey, Jr.
ALBERT G. BILBREY, JR., ESQUIRE
    Federal Court ID 12938
    South Carolina Bar 103799
    agbilbrey@jhcooper.com
JOHN HUGHES COOPER, ESQUIRE
    Federal Court ID 298
    South Carolina Bar 1387
    State Bar of Georgia 185986
    shiplaw@jhcooper.com
JOHN TOWNSEND COOPER, ESQUIRE
    Federal Court ID 10172
    South Carolina Bar 76087
    jtc@jhcooper.com
PO BOX 22513
Charleston, SC 29413
843-883-9099; fax 843-883-9335

-AND-

LAW OFFICE OF WILLIAM STUART DUNCAN, PA

    William Stuart Duncan, SC Bar #11549
    Raymond C. Fisher, SC Bar #2023
    1001 Front Street
    PO BOX 736
    Georgetown, SC 29442-0736
    Telephone:    (843) 546-1212
    Facsimile:    (843) 545-0177
    wsdlaw1@aol.com
    rfischer@lawyer.com

ATTORNEYS FOR PLAINTIFFS,
KENNETH GRANT and DOCKSIDE AND BEYOND,
LLC

July 13, 2021
Charleston, South Carolina