IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Kenneth Grant and Dockside and Beyond, LLC, <br><br>　　　　　　　　　Plaintiffs, <br><br>v. <br><br>State National Insurance Company, Inc., <br><br>　　　　　　　　　Defendant. | C/A No. 4:21-cv-01833-SAL <br><br><br><br>**OPINION & ORDER** |

This matter is before the court on Defendant State National Insurance Company, Inc.'s ("Defendant") Motion to Dismiss or, in the Alternative, Transfer Venue (the "Motion"). [ECF No. 4.] For the reasons set forth herein, the court denies the Motion to the extent it seeks dismissal of the case but grants the Motion to the extent it requests a transfer of venue.

**BACKGROUND**

This action is a marine insurance dispute. Plaintiffs Kenneth Grant ("Grant") and Dockside and Beyond, LLC ("Dockside") (together "Plaintiffs") seek damages from Defendant for breach of contract and bad faith related to Defendants' alleged failure to timely pay the claim. [ECF No. 1-1, Compl.] By way of background, Plaintiffs allege that sometime between late May and early June 2019, a 2005 60' Carver Yachts 56 Voyager named M/Y BROWN EYED GIRL (the "Vessel") sustained damage as the result of "lightning or some other electrical event." *Id.* at ¶¶ 7–9. The Vessel was insured by Defendant pursuant to a Tradewinds Yacht Insurance Policy, TWD00000921 (the "Policy"). *Id.* at ¶ 6; [ECF No. 4-1.] Following discovery of the damage, Plaintiffs filed a claim for damages, and Defendant assigned a claim number. Compl. at ¶¶ 10–11. Plaintiffs claim the Vessel was inspected and hauled out of the water before Defendant approved an estimate and a third-party began repairs. *Id.* at ¶¶ 12–16. Plaintiffs further submit

1

that, despite the alleged completion of the repairs, problems persisted. *Id.* at ¶¶ 17–45. According to Plaintiffs, "the Vessel has not been repaired, the claim has not been paid, and the claim has not been denied." *Id.* at ¶ 46. Thus, Plaintiffs proceed with filing the present action.

On June 16, 2021, Defendant removed the case to this court on the basis of diversity jurisdiction. [ECF No. 1.] And on June 23, 2021, Defendant filed the Motion that is the subject of this order. [ECF No. 4.] Plaintiffs filed a response in opposition on July 13, 2021, and Defendant submitted a reply, rendering this matter ripe for resolution by the court. [ECF Nos. 8, 16.]

## DISCUSSION

Defendant's Motion seeks alternative relief. First, Defendant argues Plaintiffs' complaint must be dismissed due to their alleged failure to comply with a condition precedent in the policy, Grant's alleged lack of standing, and their alleged failure to join a "required party." [ECF No. 4 at 3–5.] Second, if the court is not inclined to the dismiss the case, Defendant argues it must be transferred to the Southern District of New York pursuant to the Policy's forum selection clause. *Id.* at 6–8. Plaintiffs oppose dismissal and transfer of the matter. [ECF No. 8.] The court will address the dismissal arguments before turning to the forum selection clause.

**I. Dismissal Pursuant to Rules 12(b)(6) and (7).**

The court easily disposes of Defendant's three dismissal arguments below.

**A. Condition Precedent.**

Defendant's condition precedent argument relies on two Policy provisions—§ 11(a)(2) and § 7(b). General Conditions § 11(a)(2) provides that "[n]o person . . . has a right under this policy . . . to sue us on this policy unless all of its provisions have been fully complied with." [ECF No.

4-1 at 9.]¹ Defendant contends that § 7(b)'s representation that the "parties agree to submit to the exclusive jurisdiction of the United States District Court for the Southern District of New York" is a § 11(a)(2) "provision" that must be "fully complied with" before Plaintiffs have the "right under this policy . . . to sue[.]" *Id.* Because Plaintiffs filed suit in South Carolina state court, Defendant argues they "failed to comply with an express condition of the Policy," rendering the complaint insufficient to state a claim and subject to Rule 12(b)(6) dismissal. [ECF No. 4 at 5.] The argument, while perhaps creative, is unavailing.

At the outset, the court notes that Defendant fails to point to any cases concluding that a provision similar to § 7(b) qualifies as a condition precedent to suit under an analogous "right to sue" provision. The absence of applicable case law is telling. And the reason for the absence is readily apparent when you consider the nature of § 7(b).

Section 7(b) is a forum selection clause. It "implicate[s] the *appropriate* venue of a court." *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 650 (4th Cir. 2010) (emphasis added). When venue is "improper," a party may move to dismiss an action pursuant to Rule 12(b)(3), FRCP. Fed. R. Civ. P. 12(b)(3) (dismissal for "improper venue"); *see also* 28 U.S.C. § 1406(a). But as the United States Supreme Court noted, "venue is *proper* so long as the requirements of § 1391(b) are met, *irrespective of* any forum-selection clause[.]" *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tx.*, 571 U.S. 49, 57 (2013). Stated differently, a "forum-selection clause does not render venue in a court 'wrong' or 'improper' within the meaning of § 1406(a) or Rule 12(b)(3)." *Id.* at 59 (emphasis added). Thus, dismissal pursuant to a forum selection clause is not

---

¹ The page numbers referenced herein are the PDF page numbers, not the Policy's page numbers as several of the pages are unnumbered.

appropriate. Instead, the "mechanism for enforcement of forum-selection clauses that point to a particular federal district" is transfer pursuant to 28 U.S.C. § 1404(a).[2] *Id.*

Interestingly, if the court adopts Defendant's condition precedent argument and dismisses the case, Defendant will have made an end-run around the transfer-over-dismissal rule for forum selection clauses. On the most basic level, the court would be concluding that because Plaintiffs failed to file in the venue outlined in the forum selection clause, dismissal is proper. Such a result has been specifically admonished by the Supreme Court: "If a forum-selection clause rendered venue in all other federal courts 'wrong,' a defendant could always obtain automatic dismissal or transfer under § 1406(a) and would not have any reason to resort to § 1404(a)." *Atlantic Marine*, 571 U.S. at 59. This court declines Defendant's request to tiptoe around this established precedent and, essentially, allow dismissal when transfer is the appropriate remedy.

### B. Grant's Standing to Sue.

Defendant next argues that Grant must be dismissed because he is neither a named insured nor a loss payee on the Policy. [ECF No. 4 at 5.] Plaintiffs counter that Grant has standing as (1) the owner of the Vessel and (2) pursuant to Definitions § 11(a)'s definition of "Insured person" because he was the operator of the Vessel. [ECF No. 8 at 14–17 (pointing to § 11(a)(2).] While the court disagrees with Plaintiffs' reliance on the definition of "Insured person," it agrees that dismissal is not appropriate at this early stage in the litigation.

Briefly, and as noted by Defendant in reply, Plaintiffs' reliance on "Insured person" meaning "any person operating your covered yacht with your prior permission" appears misplaced. [ECF

---

[2] The Supreme Court did acknowledge, however, that if the forum-selection clause points to a non-federal forum, it is enforced through the doctrine of *forum non conveniens*. *Atlantic Marine*, 571 U.S. at 60. That issue does not exist here because the forum selection clause selects a federal forum—the Southern District of New York.

4

No. 4-1 at 5 (bold omitted).] Through this action, Plaintiffs are seeking coverage for damage to the Vessel pursuant to Coverage A – Yacht Equipment, not indemnity pursuant to Coverage B – Yacht Protection and Indemnity. Coverage A generally extends and refers to "you" and "yours," both terms defined by the Policy as the named insured. *Id.* at 8, Definitions § 36. There is no question that the named insured on the Policy is "Dockside And Beyond LLC." *Id.* at 1, Declarations Page; *see also* 3, Disappearing Deductible Endorsement; 6, Definitions § 18 (defining named insured as "the person or legal entity shown on declarations page" and their spouse or domestic partner). In contrast, Coverage B, which is not at issue here, refers to and references "insured persons." *See id.* at 16–18. The court, therefore, is not persuaded that Grant is afforded standing by way of his status as an "Insured person" for purposes of this lawsuit.

However, given that Grant is the sole member of the LLC-named insured and claims to be a part owner of the Vessel, the court is not willing to say that Defendant has met its burden to prove lack of standing at the Rule 12 dismissal stage. That is not to say that Grant has standing to pursue the claims. This court is not making a ruling either way. It simply was not provided sufficient law or analysis to rule in Defendant's favor on the issue.

**C. Rule 19, FRCP Required Party.**

Defendant's final dismissal argument is pursuant to Rules 19 and 12(b)(7), FRCP. Defendant argues that Plaintiffs failed to join the loss payee, Prince William Marine, Sales, Inc. ("Prince William"), as a party to the lawsuit. [ECF No. 4 at 5.] According to Defendant, Prince William is a required party pursuant to Rule 19(a)(1)(B)(i), FRCP and its absence renders the case subject to dismissal pursuant to Rule 12(b)(7), FRCP. *Id.* Plaintiffs argue in opposition that Defendant fails to present any evidence that Prince Williams has claimed an interest in the subject of the action as required by Rule 19, and that Grant's obligations to Prince William are separate and apart

from this litigation and incongruent results are "unlikely." [ECF No. 8 at 21–22.] They further argue that even if Prince William is a required party, joinder—as opposed to dismissal—is the proper remedy. *Id.* The court agrees that Defendant has not met its burden pursuant to Rule 19(a)(1)(B), FRCP.

"Rule 12(b)(7) of the Federal Rules of Civil Procedure allows a court to dismiss an action for failure to join a party in accordance with Rule 19." *Register v. Cameron & Barkley Co.*, 467 F. Supp. 2d 519, 530 (D.S.C. 2006). "On a Rule 12(b)(7) motion, the court initially determines if the absent party should be joined as a necessary party in accordance with the criteria set forth in Rule 19(a)(1)." *Id.*; *see also Gunvor SA v. Kayablian*, 948 F.3d 214, 220 (4th Cir. 2020) (noting court first determines "whether a party is necessary to a proceeding because of its relationship to the matter under consideration" (citing *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 433 (4th Cir. 2014))). A party may be necessary under either Rule 19(a)(1)(A) or 19(a)(1)(B). Here, Defendant argues Rule 19(a)(1)(B)(i): The person "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may[] as a practical matter impair or impede the person's ability to protect the interest[.]" Fed. R. Civ. P. 19(a)(1)(B)(i).

For purposes of Rule 19(a)(1)(B), FRCP the person must (1) claim an interest relating to the subject of the action and (2) the disposal of the action without that person must meet the requirements of subparts (i) or (ii). *See Gunvor*, 948 F.3d at 220. While the question of whether the non-party must take *affirmative* action to satisfy the first requirement is an open one in the Fourth Circuit, this court concludes that it need not decide the present Motion based solely on the absence of Prince William claiming an interest in the action. *See id.* (noting that "[t]hough a nonparty may formally claim an interest in an action, a 'court with proper jurisdiction may also

6

consider *sua sponte* the absence of a required person and dismiss for failure to join'" and concluding an affidavit submitted by the non-party is sufficient "[t]o the extent that Rule 19(a) requires *any* affirmative action from the nonjoined party at issue" (quoting *Republic of Philippines v. Pimente*, 553 U.S. 851, 861 (2008)). Rather, this court concludes that Defendant has not met its burden to establish the second requirement, *i.e.*, that disposal of the action would "as a practical matter impair or impede [Prince William's] ability to protect the interest." Fed. R. Civ. P. 19(a)(1)(B)(i); *Pay Tel Commc'ns v. Lattice Inc.*, No. 2:20-cv-2713, 2020 WL 6048806, at *2 (D.S.C. Oct. 9, 2020) (recognizing movant bears the burden of establishing that a party is necessary).

Generally speaking, in those contract cases requiring joinder of a nonparty under Rule 19, courts note that a ruling in favor of the plaintiff would necessarily implicate a nonparty's rights or obligations under an existing contract or hold defendant liable for breaches committed by a nonparty signatory. *See Pay Tel*, 2020 WL 6048806, at *4 (outlining cases). In this case, there is no argument that a finding in favor of Plaintiffs would result in Defendant being liable for Prince William's breach. Thus, the court must determine whether Defendant has shown that a ruling in favor of Plaintiffs would necessarily implicate Prince William's rights under the Policy. This court concludes that Defendant has not made such a showing. The adjudication of Plaintiffs' case will only resolve whether Defendant breached its contract with Plaintiffs. The questions of whether Defendant and/or Plaintiffs breached a contractual agreement with Prince William are left open for subsequent resolution. The court is left without any explanation for how continuing this action without Prince William will "impair or impede" Prince William's ability to protect its interests.

**II. Alternative Request to Transfer Venue.**

The last issue, *i.e.*, transfer of the case to the Southern District of New York, takes us back to the first, the forum selection clause in § 7(b). Defendant submits that if the court is not inclined to dismiss the case (and it is not), the court should apply the forum selection clause and transfer venue to the Southern District of New York. Defendant argues that this is a policy of marine insurance, federal maritime law governs, and the forum selection clause is prima facie valid and enforceable. [ECF No. 4 at 6–9.]

In response, Plaintiffs agree that there is "an entrenched federal maritime rule favoring the enforcement of forum selection clauses in maritime contracts unless they are unreasonable under the circumstances." [ECF No. 8 at 4.] But they also submit two arguments for why this court should not transfer the case. The first relies on another Policy provision, § 9(a), governing conformity with statutes and severability. And the second is a public policy argument. The court addresses each, in turn, below.

**A. Does Policy § 9(a) require amendments to § 7(a) and (b)?**

Plaintiffs first argue that § 9(a) requires amendments to § 7(a) (choice of law clause) and (b) (forum selection clause) to replace the references to New York law with South Carolina law and to change venue from exclusively in the Southern District of New York to include South Carolina as an alternative venue location. *Id.* Section 9(a), Conformity to Statute; Severability, provides: "If any term of this policy conflicts with any applicable state's law, or federal statute, they are amended to conform to the minimum requirements of that law or statute." [ECF No. 4-1 at 9.] Applying § 9(a), Plaintiffs contend that § 7(a) conflicts with S.C. Code Ann. § 38-61-10, which provides that "contracts of insurance on property, lives, or interests in this State are considered to be made in the State . . . and are subject to the laws of this State." S.C. Code Ann. § 38-61-10.

Thus, according to Plaintiffs, § 7(a) of the Policy must be amended to state that the Policy shall, in the absence of any entrenched federal maritime law, be "interpreted and construed . . . under the internal laws of" South Carolina (instead of New York) "without regard to conflict of laws principles." [ECF No. 4-1 at 9.]  In that same vein, Plaintiffs also contend that § 7(b) conflicts with S.C. Code Ann. § 15-7-120(a),[3] such that South Carolina should be an alternative venue option.  The court easily resolves this argument in favor of Defendant.

Plaintiffs' concession that federal law governs is fatal to their § 9(a) argument.  In fact, as a result of Plaintiffs' concession and given a plain reading of the Policy, the court does not have to reach the question of whether § 7 conflicts with the South Carolina statutes referenced by Plaintiffs.  The argument is a red herring.

"[W]hen parties to a contract confer jurisdiction and venue on a particular court, as a general matter federal common law directs courts to favor enforcement of the agreement, so long as it is not unreasonable." *Albemarle*, 628 F.3d at 649 (citing *The Bremen v. Zapata Off-Shore Co*., 407 U.S. 1, 10 (1972)).  A forum selection clause, like the one at issue in § 7(b), "implicate[s] the appropriate venue of the court." *Id.* at 650.  "The appropriate venue of an action is a procedural matter that is governed by federal rule and statutes." *Id.*  Thus, when this court interprets the forum selection clause, it "will apply federal law and in doing so, give effect to the parties' agreement." *Id.* ("[A] federal court interpreting a forum selection clause must apply federal law in doing so."). In that regard, the court must look to the language of the forum selection clause and determine

---

[3] S.C. Code Ann. § 15-7-120(a) provides that "[n]otwithstanding a provision in a contract requiring a cause of action arising under it to be brought in a location other than as provided in this title and the South Carolina Rules of Civil Procedure for a similar cause of action, the cause of action alternatively may be brought in the manner provided in this title and the South Carolina Rules of Civil procedure for such causes of action." Notably, the Fourth Circuit Court of Appeals has already rejected an argument that this statute represents a strong policy of the forum state such that it would render a contrary forum selection clause unreasonable. *Albemarle,* 628 F.3d at 652.

whether, according to federal law, the language used is mandatory or permissive. *Id.* at 651 (clauses are "permissive unless they contain specific language of exclusion").

The language of the forum selection clause in this case contains language of exclusion. It states: "The parties agree to submit to the *exclusive* jurisdiction of the United States District Court for the Southern District of New York[.]" [ECF No. 4-1 at 9 (emphasis added).] Under federal common law, § 7(b) would be a mandatory forum selection clause. However, like in *Albemarle*, the Policy also includes a choice-of-law provision—§ 7(a). *See Albemarle*, 628 F.3d at 651 (noting court must apply forum selection clause under the law specified in the parties' choice-of-law provision). As a result, the court must determine whether application of the choice-of-law provision changes the result. *See id.* ("[A]pplying English law [as directed in the choice-of-law provision] makes a difference, as the parties have recognized and stipulated."). It does not.

The choice-of-law provision brings us right back to federal common law. Again, § 7(a)'s default rule is "federal maritime law." [ECF No. 4-1 at 9.] The Policy is "governed by, interpreted and construed under United States federal maritime law" unless there is no entrenched federal maritime law. *Id.* Here, Plaintiffs agree that *The Bremen* "establishes an entrenched federal maritime rule favoring enforcement of forum selection clauses in maritime contracts[.]" [ECF No. 8 at 4.] And as noted above, federal law dictates that language of exclusion renders a forum selection clause mandatory. The outcome under the choice-of-law provision is the same as under the default rule that federal law governs procedural matters such as venue. In both instances, the court is applying federal law to interpret the forum selection clause. This matter, therefore, is unlike *Albemarle* in that applying the choice-of-law provision does not change the mandatory nature of the forum selection clause at issue.

10

In sum, the parties selected federal law to govern interpretation of the Policy, including the forum selection clause, unless such federal law does not exist. Plaintiffs acknowledge federal law exists. The court does not have to reach New York law (the alternative to federal law provided in the choice-of-law provision) or Plaintiffs' arguments about amending § 7 to include South Carolina law. If the court does not reach New York law to interpret the forum selection clause, it would not reach South Carolina law on the same point—even if Plaintiffs were successful in proving that § 9(a) requires amendments to § 7. Unless Plaintiffs can prove that the forum selection clause is unreasonable as outlined in *The Bremen*, this court must apply the clause and transfer this case.

### B. Does enforcement of the forum selection clause contravene public policy?

Plaintiffs' second argument is one of unreasonableness under *The Bremen*. Plaintiffs argue that enforcing the forum selection clause would be unreasonable because it would "contravene a strong public policy of the State of South Carolina in protecting its consumers from bad faith insurance claims handling practices." [ECF No. 8 at 10–14.] Plaintiffs submit that New York does not recognize bad faith in the same manner as South Carolina and enforcement would result in a "*de facto* waiver of Plaintiff's[sic] right to bring a bad faith cause of action." *Id.* at 14.

In making the argument, Plaintiffs concede that "language very similar to the forum selection clause at issue has been deemed to be mandatory" and "the scope of the forum selection clause at issue is broad enough to encompass [their] claims." *Id.* at 11. But they point to the fact that this court need only "give effect to the parties' selection" of the "forum only if it would not be unreasonable to do so." *Albemarle*, 628 F.3d at 651. Under *The Bremen*, a forum selection clause may be found unreasonable if:

> (1) [its] formation was induced by fraud or over-reaching; (2) the complaining party "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law

11

> may deprive the plaintiff of a remedy; or (4) [its] *enforcement would contravene a strong public policy of the forum state*.

*Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996) (emphasis added) (summarizing *The Bremen*). Plaintiffs here point only to the fourth unreasonableness option—transferring the case to the Southern District of New York will contravene South Carolina's strong public policy of recognizing bad faith claims.

Thus, the final question for the court is whether Plaintiffs have shown that enforcement of the forum selection clause will contravene a *strong* public policy in South Carolina. Having carefully considered the parties' positions, the court must conclude that Plaintiffs have not met their burden, and the answer is no.

While New York law may not be as favorable as South Carolina law on the issue of bad faith, it does not leave Plaintiffs without any remedy. Plaintiffs are correct that New York does not recognize a tort claim for bad faith. *See Sichel v. UNUM Provident Corp.*, 230 F. Supp. 2d 325, 329 (S.D.N.Y. 2002) ("[A] claim [for bad faith] 'cannot stand as a distinct tort cause of action.'" (citation omitted)). It does, however, allow a plaintiff to "be awarded consequential damages for losses stemming from a deliberate delay in processing claims." *Id.* Thus, additional consequential damages that flow from the delay in processing the claim may be recovered by Plaintiffs under their breach of contract claim. For this reason, the court cannot say that Plaintiffs have shown that the Policy's otherwise valid and enforceable forum selection clause is unenforceable as unreasonable.

## CONCLUSION

In accordance with the foregoing analysis, Defendant's Motion, ECF No. 4, is **GRANTED in part** and **DENIED in part**.  The court declines to dismiss the complaint, but the case is hereby **TRANSFERRED** to the United States District Court for the Southern District of New York.

**IT IS SO ORDERED.**

/s/ Sherri A. Lydon_____<br>United States District Judge

February 18, 2022
Florence, South Carolina